ACCEPTED
13-15-00033-CV
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
4/1/2015 11:10:14 AM
DORIAN RAMIREZ
CLERK

**No. 13-15-00033-CV**

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/1/2015 11:10:14 AM
DORIAN E. RAMIREZ
Clerk

In the Court of Appeals
For the Thirteenth Judicial District of Texas
Corpus Christi-Edinburg, Texas

Adan Perez, Jr.,
Appellant

v.

Weslaco Independent School District,
Appellee

On Appeal from Cause No. C-641-11-F
In The 332nd District Court of Hidalgo County, Texas
The Honorable Judge Mario Ramirez, Jr., Presiding

**Brief of Appellant**

**Hawash Meade Gaston
Neese & Cicack LLP**

Andrew K. Meade
Texas Bar No. 24032854
Samuel B. Haren
Texas Bar No. 24032854
2118 Smith Street
Houston, Texas 77002
713-658-9001 (phone)
713-658-9011 (fax)
sharen@hmgnc.com

**Attorneys for Appellant**

**Oral Argument Not Requested**

# Table of Contents

Table of Contents ...................................................................................................i

Identity of the Parties ........................................................................................ ii

References to the Record ...................................................................................iv

Index of Authorities ..........................................................................................v

Statement of the Case...................................................................................... vii

Statement on Oral Argument ........................................................................ viii

Issues Presented ................................................................................................ix

Legal Standards..................................................................................................1

Statement of Facts .............................................................................................1

Summary of the Argument.................................................................................4

Argument............................................................................................................5

    I.  The District Court has jurisdiction over Perez's whistleblower claim............5

        A. Perez alleged sufficient facts to establish the District Court's jurisdiction ................................................................................................5

           1.  Perez alleged that he was a public employee .......................................6

           2.  Perez alleged that WISD violated the Texas Whistleblower Act .........6

        B. WISD's challenges to Perez's pleadings are based on mistaken interpretations of fact and law ........................................................................7

           1.  Perez blew the whistle to the TEA prior to his performance review and subsequent termination ......................................................7

           2.  Perez blew the whistle on illegal activity.............................................8

           3.  Perez had a good-faith belief that the TEA was an appropriate law enforcement authority...............................................................10

           4.  Perez was not required to exhaust his administrative remedies..........13

           5.  Perez initiated his Whistleblower claim in a timely manner ..............14

    II. The District Court has jurisdiction over Perez's breach of reasonable expectation of renewal claim.................................................................................15

Conclusion .......................................................................................................16

Certificate of Compliance ...............................................................................18

Certificate of Service .......................................................................................19

Appendix ..........................................................................................................20

## Identity of the Parties

Appellant certifies that the following is a complete list of the counsel and parties to the order from which this appeal is taken.

*Appellant*

Adan Perez, Jr.

*Counsel for Appellant*

Andrew K. Meade
Texas Bar No. 24032854
Samuel B. Haren
Texas Bar No. 24032854
Hawash Meade Gaston Neese & Cicack LLP
2118 Smith Street
Houston, Texas 77002
713-658-9001 (phone)
713-658-9011 (fax)
ameade@hmgnc.com
sharen@hmgnc.com

*Appellee*

Weslaco Independent School District

*Counsel for Appellee*

Stacy Tuer Castillo
Texas Bar No. 00796322
Walsh, Anderson, Gallegos, Green & Treviño, P.C.
100 NE Loop 410
San Antonio, Texas 78216
210-979-6633 (phone)
210-979-7024 (fax)
scastillo@wabsa.com

Miguel A. Saldaña
Texas Bar No. 17429450
Walsh, Anderson, Gallegos, Green & Treviño, P.C.
1105 East 3rd Street
Weslaco, Texas 78216
956-647-5122 (phone)
956-647-5421 (fax)
msalana@wabsa.com

## References to the Record

| *Reference* | *Meaning* |
|---|---|
| CR $x$ | Clerk's Record at page $x$ |

# Index of Authorities

***Case***             ***Page(s)***

*Canutillo Ind. Sch. Dist. v. Farran*,
409 S.W.3d 653 (Tex. 2013) ...............................................................13

*City of Mesquite v. PKG Contracting, Inc.*,
263 S.W.3d 444 (Tex. App.—Dallas 2008, pet. denied) ..............................16

*Clear Lake City Water Auth. v. MCR Corp.*,
No. 01-08-00955-CV, 2010 WL 1053057 (Tex. App.—Houston [1st Dist.] Mar. 11, 2010, pet. denied)...........................................................15–16

*Llanes v. Corpus Christi Ind. Sch. Dist.*,
64 S.W.3d 638 (Tex. App.—Corpus Christi 2001, pet. denied) .....................8

*Soliz v. Nueces County*,
134 S.W.3d 298 (Tex. App.—Corpus Christi-Edinburg 2003, pet. denied) ...............................................................................................1

*State v. Lueck*,
290 S.W.3d 876 (Tex. 2009) .........................................................5–6, 14

*Tex. Dept. of Criminal Justice v. McElyea*,
239 S.W.3d 842 (Tex. App.—Austin 2007, pet. denied) ..............................8

*Tex. Dept. of Mental Health & Mental Retardation v. Olofsson*,
59 S.W.3d 831 (Tex. App.—Austin 2001, pet. dismissed)...........................14

*Univ. of Houston v. Barth*,
403 S.W.3d 851 (Tex. 2013) ........................................................11–12

*Univ. of Tex. Sw. Med. Ctr. at Dallas v. Genilello*,
398 S.W.3d 680 (Tex. 2013) ...............................................................11

*Weslaco Ind. Sch. Dist. v. Perez*,
No. 13-12-00581-CV, 2013 WL 3894951 (Tex. App.—Corpus Christi-Edinburg Jul. 25, 2013) (no pet.) .................................................1, 6

| *Statute/Rule* | *Page(s)* |
|---|---|
| 34 C.F.R. § 80.43 | 8 |
| 29 U.S.C. § 1104 | 9 |
| 29 U.S.C. §1106 | 9 |
| Tex. Admin. Code § 61.1018 | 10, 13 |
| Tex. Admin. Code § 61.1032 | 13 |
| Tex. Admin. Code § 61.1093 | 13 |
| Tex. Educ. Code § 7.021 | 12 |
| Tex. Educ. Code § 41.105 | 10 |
| Tex. Educ. Code § 44.009 | 13 |
| Tex. Educ. Code § 44.010 | 12 |
| Tex. Gov. Code § 554.002 | 7, 11 |
| Tex. Gov. Code § 554.006 | 13 |
| Tex. Gov. Code § 554.0035 | 5, 14 |
| Tex. Lab. Code 504.072 | 9 |

## Statement of the Case

Appellant Adan Perez, Jr. is a former non-teacher employee of Appellee Weslaco Independent School District ("WISD").

Perez seeks money damages for violation the Texas Whistleblower Act and for breach of his reasonable expectation of contract renewal. CR 413 ¶¶ 20–22. Perez seeks non-monetary relief for violation of his rights under the Texas Constitution. *Id.* at ¶¶ 23–25.

In June 2012, WISD filed a plea to the jurisdiction with respect to all claims other than the Texas Whistleblower Act. CR 27. The 332nd District Court of Hidalgo County, Texas (the "District Court") denied that plea to the jurisdiction in September 2012. CR 110. This Court affirmed in part and reversed in part. CR 207.

In October 2014, WISD filed a plea to the jurisdiction (the "Plea") with respect to Perez's claims for violation of the Texas Whistleblower Act and for breach of his reasonable expectation of contract renewal. CR 94. The 332nd District Court granted the Plea on December 17, 2015. CR 409. This interlocutory appeal follows.

## Statement on Oral Argument

Given the straightforward factual allegations and legal issues involved in this case, Perez does not believe that oral argument would materially aid the Court in deciding this matter.

## Issues Presented

1. Whether the trial court lacked jurisdiction over Perez's claim for violation of the Texas Whistleblower Act.

2. Whether the trial court lacked jurisdiction over Perez's claim for breach of his reasonable expectation of contract renewal.

## Legal Standards

Subject matter jurisdiction is a question of law, and a trial court's ruling on a plea to the jurisdiction is reviewed *de novo*. *Soliz v. Nueces County*, 134 S.W.3d 298, 300 (Tex. App.—Corpus Christi-Edinburg 2003, pet. denied). In making that determination, this Court has held that:

> We construe the pleadings liberally in favor of the plaintiff and look to the pleaders' intent. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded an opportunity to amend. . . . Even a failure to allege sufficient facts to demonstrate jurisdiction does not necessarily authorize immediate dismissal. It is only where the court can see that, even by amendment, no cause of action can be stated consistent with the facts alleged that the court is without jurisdiction.
>
> If the plea challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue raised, as the trial court is required to do so. In a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. If a fact question exists, then the plea cannot be granted and the fact issue will be resolved by the fact finder.

*Weslaco Ind. Sch. Dist. v. Perez*, No. 13-12-00581-CV, 2013 WL 3894951, at *1 (Tex. App.—Corpus Christi-Edinburg Jul. 25, 2013) (no pet.).

## Statement of Facts

From July 2004 through June 2010, Perez was a risk manager for WISD. CR 410 at ¶ 6. WISD had a longstanding pattern and practice of automatically

1

renewing all of its employment contracts except in the case of cause, misconduct, or budgetary problems. CR 411 at ¶ 7. From 2005 through 2005, Perez was routinely commended for his performance, and his performance reviews were more than satisfactory. *Id.* at ¶ 8. True to its *de facto* policy, WISD renewed Perez's employment contract every year until the events giving rise to this litigation. *See id.* at ¶ 7. WISD even represented to Perez that it would follow that policy with him. CR 257 at ¶ 23.

As WISD's risk manager, Perez managed employee benefit plans, including WISD's self-funded workers' compensation and self-funded employee health insurance plans. CR 410–11 at ¶ 6. In early 2009, Perez became aware of a scheme within WISD to siphon money from the self-funded programs into a construction fund with which to build a new press box at WISD's football stadium. CR 411 at ¶ 9. Perez understood that such misappropriation of self-funded plan amounts— especially those which had received state and federal funds—violated state and federal statutes and regulations. *Id.*

Perez did not sit idly by while the funds under his charge were illegally drained. Perez made repeated attempts to warn WISD's management, superintendent, and board members of this unlawful misappropriation. *Id.* In return, Perez was either rebuked or ignored. *Id.* at ¶¶ 9–11; CR 255–56 at ¶¶ 5–6.

Perez was even told that the shortfall in the employee benefit funds were not a serious concern as they would be repaid from future bond sales. *Id.* at ¶ 9.

Tired of fruitlessly complaining to administrators who were either (at best) willfully ignorant or (at worst) complicit, Perez decided to seek outside help. *See* CR 411–12 at ¶ 12. Perez contacted the Texas Education Agency ("TEA") by telephone to report WISD's misuse of funds. CR 256 at ¶¶ 8–9. In order to substantiate Perez's accusations, the TEA asked Perez to obtain documentation showing WISD's misappropriations. CR 411–12 at ¶ 12. To do so, Perez contacted the WISD business office and requested certain documents showing the illicit transfer of funds. *See id.* Perez believes WISD became aware of his investigation and his contact with TEA. *Id.*

WISD did not use Perez's warnings and the impending TEA investigation to change their ways. Instead, they doubled-down and decided to punish Perez for blowing the whistle. After a long string of glowing performance reviews, Perez was rated poorly in 2010—his first review after contacting the TEA. CR 412 at ¶ 14. This review made numerous false accusations about Perez's work and recommended that Perez's contract not be renewed. *Id.*; CR 389–92, 394. Despite WISD's longstanding pattern and practice of renewing all employment contracts, Perez's contract was not renewed in and he ceased to be a WISD employee on June 21, 2010. CR 412 at ¶ 15, CR 394.

Perez filed an appeal of his termination on July 20, 2010. CR 297. On October 28, 2010, WISD set a hearing for November 1, 2010. CR 91. That original hearing date was cancelled. WISD and Perez's counsel finally met on December 1, 2010. CR 257 at ¶ 19. Although Perez and his counsel were under the impression that this was to be a settlement discussion, WISD held an unannounced Level 1 complaint hearing. *Id.* Perez filed suit against WISD on March 8, 2011. *Id.* at ¶ 21.

Perez was never reinstated by WISD, and the stigma of the false and disparaging performance review/termination has left Perez unable to find work in his chosen profession of municipal/school district risk management. *Id.* at ¶ 19; CR 257 at ¶ 24.

## Summary of the Argument

The District Court has jurisdiction over Perez's Whistleblower claim. WISD violated numerous state and federal statutes/regulations by secretly using its employee benefit funds to pay for stadium improvements. Because the TEA is charged with regulating and overseeing such transactions, it was an appropriate law enforcement authority for purposes of the Whistleblower Act. WISD learned of this whistleblowing and terminated Perez in retaliation.

The District Court likewise has jurisdiction over Perez's breach of reasonable expectation of contract renewal. Perez had a written contract with

4

WISD which included an implied expectation of renewal. The mere existence of an implied term in a written contract did not deprive the District Court of jurisdiction.

## Argument

WISD challenged the District Court's jurisdiction over Perez's claims for violation of the Texas Whistleblower Act and breach of the reasonable expectation of renewal. Perez will show the Court that the District Court has jurisdiction over his claims and erred by granting WISD's Plea.

**I.     The District Court has jurisdiction over Perez's whistleblower claim.**

**A.     Perez alleged sufficient facts to establish the District Court's jurisdiction.**

The Texas Whistleblower Act waives sovereign immunity with respect to "[a] public employee who alleges a violation" of Chapter 554 of the Texas Government Code. Tex. Gov. Code § 554.0035. The Texas Supreme Court has interpreted this literally: "there are but two jurisdictional requirements under section 544.0035. For the government's immunity to be waived, the plaintiff must (1) be a public employee and (2) allege a violation of [Chapter 554]." *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009) (emphasis removed).

In the context of a plea to the jurisdiction, a court may consider the "merits" of a plaintiff's claim only to the extent "necessary to resolve whether a plaintiff has alleged a violation under the [Whistleblower] Act." *Id.* at 881. This "does not mean that [a plaintiff] must prove [its] claim in order to satisfy the jurisdictional hurdle."

5

*Id.* at 884. The statute only requires an "alleg[ation]" of the necessary elements, and the Texas Supreme Court "ha[s] urged that the burden of proof with respect to these jurisdictional facts does not involve a significant inquiry into the substance of the claims." *Id.*

Perez's live pleading (the "Petition") alleges both of the jurisdictional prerequisites for waiver immunity under the Texas Whistleblower Act.[1] *See* CR 410–415.

### 1. Perez alleged that he was a public employee.

The first jurisdictional element is that the plaintiff was a public employee at the time of the unlawful retaliation. *See Lueck*, 290 S.W.3d at 881. Perez's Petition alleges that he "was employed as the Risk Manager of WISD from July 2004 through June 2010." CR 410 at ¶ 6. WISD has not challenged that this element has been adequately pled.

### 2. Perez alleged that WISD violated the Texas Whistleblower Act.

The second element for waiver of immunity requires Perez to plead that WISD violated Chapter 554 of the Texas Government Code. *Lueck*, 290 S.W.3d at 881. The Whistleblower Act provides Perez with the following protection:

---

[1] Alternatively, the Petition does not allege any facts demonstrating that Perez *cannot* meet the elements of the Texas Whistleblower Act, so repleading would be the proper remedy instead of outright dismissal. *See Weslaco Ind. Sch. Dist*, 2013 WL 3894951, at *1.

6

A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

Tex. Gov. Code § 554.002(a). Perez has alleged precisely this.

Perez's theory of the case is simple: WISD misappropriated funds in violation of state and federal law. Perez blew the whistle internally, and WISD ignored him. Perez blew the whistle to the TEA, and WISD gave him a false performance review and fired him. *See generally* CR 410–15. No more is required to establish jurisdiction over a whistleblower claim.

**B.     WISD's challenges to Perez's pleadings are based on mistaken interpretations of fact and law.**

WISD's Plea challenged Perez's whistleblower allegation in five respects: (1) the timing of the whistleblowing versus the adverse employment action, (2) WISD's violation of law, (3) whether the TEA is an appropriate law enforcement body, (4) exhaustion of administrative remedies, and (5) the statute of limitations. As demonstrated below, these arguments do not defeat the District Court's jurisdiction.

**1.     Perez blew the whistle to the TEA prior to his performance review and subsequent termination.**

WISD complains that he notified the TEA about WISD's misappropriation of funds after his performance review and termination. CR 118–120. But Perez's

7

Petition and affidavit show that he initially blew the whistle to TEA prior to his performance review. CR 256 at ¶¶ 8–9, 411–12 at ¶¶ 12–14.

### 2. Perez blew the whistle on illegal activity.

WISD next complains that, in his deposition, non-attorney Perez could not cite an exact statutory provision violated by WISD. CR 120–123. Under Texas law, however, a whistleblower is not required to "identify a specific law when making a report . . . ." *Llanes v. Corpus Christi Ind. Sch. Dist.*, 64 S.W.3d 638, 642 (Tex. App.—Corpus Christi 2001, pet. denied). Similarly, the whistleblower is not required to "prove that a violation of law actually occurred." *Id.* "In other words, when an employee believes and reports in good faith that a violation has occurred, but is wrong about the legal effect of the facts, he is nevertheless protected by the whistleblower statute." *Tex. Dept. of Criminal Justice v. McElyea*, 239 S.W.3d 842, 850 (Tex. App.—Austin 2007, pet. denied).

Perez's response to WISD's Plea pointed-out several statutes and regulations which were violated by WISD. *See* CR 239 at ¶ 46. For example, title 34, section 80.43 of the Code of Federal Regulations punishes persons who "materially fail[] to comply with the terms of an award[ed]" federal grant. 34 C.F.R. § 80.43(a). Perez has alleged that WISD misused funds which came, in part, from federal grants and that such use was not in compliance with the terms of those grants. CR 411 at ¶ 9–10.

United State Code, title 29, sections 1104 and 1106 prohibit certain transactions by fiduciaries of various self-funded plans. *See* 29 U.S.C. §§ 1104(a), 1106(a)–(b). Perez has alleged that WISD engaged in the sort of misallocating and self-dealing prohibited by these sections. *See* CR 411 at ¶¶ 9–10. WISD argues that it is not bound by these provisions. CR 419. Perez respectfully submits that such an argument on the merits should be brought through a motion for summary judgment and not in a plea to the jurisdiction.

Section 540.072 of the Texas Labor Code allows a political subdivision to set-aside funds for workers' compensation benefits "in a separate account . . ." Tex. Lab. Code 504.072(b). Funds so set aside must be "sufficient to pay all costs" associated with the workers' compensation coverage and are subject to special segregation, accounting, and disclosure rules. Tex. Lab. Code § 504.072. Perez has alleged that WISD violated this statute by secretly raiding the workers' compensation fund and leaving a shortfall. Perez is not alone in his belief that WISD violated this statute. After an investigation, the TEA's auditor found that "the transfer of monies from the workers' compensation fund to the construction fund was not allowable under Section 504.072 of the Texas Labor Code." CR 398. As stated by the TEA, section 504.072 "provides a list of allowable disbursement and the use of appropriations for construction purposes is not included in the list." *Id.*

9

Section 41.105 of the Texas Education Code sets forth a variety of "authorized expenditures" of "public school funds." Tex. Educ. Code § 41.105(a). Although the statute authorizes many types of expenditures of school funds, it does not appear to authorize (1) the use of funds "designated for a specific purpose" to be used for improving athletic facilities or (2) the use of bond proceeds to repay secret debits from employee benefits funds. *See* Tex. Educ. Code § 41.105(c). Perez has alleged that WISD violated this statute by using and intending use funds in unauthorized manners.

Finally, section 61.1018 of the Texas Administrative Code allows the TEA to "distribute staff salary allotment funds" to school districts participating in the Teacher Retirement System—such as WISD—"for the purpose of making payments of health care supplementation" to certain full-time employees.[2] Tex. Admin. Code § 61.1018(a), (b)(1)(A). Perez's Petition shows that WISD violated this regulation by using health care funds for other purposes. CR 411 at ¶¶ 9–10.

Perez has shown that he blew the whistle on unlawful conduct.

### 3. Perez had a good-faith belief that the TEA was an appropriate law enforcement authority.

To take refuge under the Texas Whistleblower Act, the plaintiff must report the unlawful actions to "an appropriate law enforcement authority . . . that the

---

[2] This violation was not alleged in Perez's response to WISD's Plea. It is, however, an example of the sort of violation which could be alleged if Perez is required to replead.

employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." Tex. Gov. Code § 554.002(b). The Texas Supreme Court has clarified that a body will "constitute an appropriate law-enforcement authority under the Whistleblower Act" if it has the "authority" to "investigate . . . violations of the law against third parties" or has "authority to promulgate regulations governing the conduct of such third parties." *Univ. of Houston v. Barth*, 403 S.W.3d 851, 857 (Tex. 2013).

An employee's "good faith belie[f]" must satisfy objective and subjective standards:

(1)     the employee believed the governmental entity was authorized to (a) regulate under or enforce the law alleged to be violated in the report, or (b) investigate or prosecute a violation of criminal law; and

(2)     the employee's belief was reasonable in light of the employee's training and experience.

*Univ. of Tex. Sw. Med. Ctr. at Dallas v. Genilello*, 398 S.W.3d 680, 683 (Tex. 2013). The whistleblower's "belief can only satisfy the good-faith requirement if a reasonably prudent employee in similar circumstances would have thought so." *Id.*

Perez has averred that he contacted the TEA for several subjective reasons. First, an attorney at the United States Attorney General's office suggested it to him. CR 256 at ¶ 7. This made sense to Perez because, "based on [his] education

11

and experience, [Perez] believed that the TEA was the appropriate entity to [which he] should make [his] report of the violation of law." *Id.* at ¶ 10. Perez further believed that the TEA would hold authority over WISD because, at "[a]ll times during [his] employment, WISD held the TEA out as the appropriate regulatory enforcement agency related to the laws governing the school district." *Id.* at ¶ 11. For purposes of a plea to the jurisdiction, this is sufficient proof of subjective belief.

Perez's belief that the TEA was an appropriate body to regulate a school district's financial improprieties was objectively reasonable. As stated above, a body is an appropriate law enforcement authority if it has the power to, *inter alia*, investigate third parties or promulgate rules governing third parties. *Univ. of Houston*, 403 S.W.3d at 857. The TEA does both.

The TEA is statutorily empowered to "review school district budgets, audit reports, and other fiscal reports . . . ." Tex. Educ. Code § 7.021(b)(13). In so doing, the TEA is allowed to "determine whether all legal requirements have been met" with respect to those budgets/reports. Tex. Educ. Code § 44.010. In fact, the TEA asserted the authority to "regulate under or enforce the law alleged to be violated" when it (1) audited WISD's illicit transfer of the funds and (2) required WISD to submit a corrective action plan within ten business days. CR 396.

The TEA likewise has significant rulemaking authority concerning WISD's misconduct. The TEA is statutorily authorized to promulgate the format of school districts' budgets and financial reports. Tex. Educ. Code § 44.009(a). Moreover, the TEA has promulgated rules governing, *inter alia*, (1) use healthcare funds, (2) payments for facilities, and (3) spending of other allotted high school funds. Tex. Admin. Code §§ 61.1032, 61.1093, 61.1018.

In light of these investigatory and rulemaking functions, a reasonably prudent WISD employee would believe that TEA had the power to promulgate and enforce statutes and regulations concerning a school district's misuse of employee benefit funds.

### 4. Perez was not required to exhaust his administrative remedies.

WISD further complains that Perez "fail[e]d to exhaust his administrative remedies as required by the Texas Whistleblower Act." CR 127. This too is incorrect.

The Texas Whistleblower Act requires a complaining employee to "initiate action under the grievance or appeal procedures" of his employer.[3] Tex. Gov. Code § 554.006(a). The employee is not, however, required to exhaust those remedies. *Canutillo Ind. Sch. Dist. v. Farran*, 409 S.W.3d 653, 657 (Tex. 2013) ("To be sure,

---

[3] For the reasons discussed in *infra* § I.B.5., even this limited requirement is likely not jurisdictional.

the Whistleblower Act has its own statutory remedies and procedures that do not require exhaustion . . . .").

Perez satisfied the Whistleblower Act by initiating the grievance procedure within thirty days of his termination from WISD. CR 257 at ¶¶ 16, 18. His alleged subsequent failure to exhaust his administrative remedies is not relevant to his whistleblower claim.

### 5. Perez initiated his Whistleblower claim in a timely manner.

The Texas Whistleblower Act identifies specific deadlines by which claims must be filed. These are not, however, jurisdictional. As plainly stated by the Legislature and the Supreme Court, sovereign immunity is waived—and a trial court will have jurisdiction—if "a public employee . . . alleges a violation" of the Whistleblower Act. Tex. Gov. Code § 554.0035. *See also Lueck*, 290 S.W.3d at 881 ("[T]here are but two jurisdictional requirements under section 544.0035. For the government's immunity to be waived, the plaintiff must (1) be a public employee and (2) allege a violation of [Chapter 554].").

As such, failure to comply with the dates and deadlines—called a "limitation period" by the statute—"gives rise to the affirmative defense of limitations, but it is not grounds for a plea to the jurisdiction." *Tex. Dept. of Mental Health & Mental Retardation v. Olofsson*, 59 S.W.3d 831, 832–33 (Tex. App.—Austin 2001, pet.

dismissed). Simply put, "limitations is not a jurisdictional issue" and should not be decided in a plea to the jurisdiction. *Id.*

## II. The District Court has jurisdiction over Perez's breach of reasonable expectation of renewal claim.

Perez's claim for breach of his reasonable expectation of renewal is brought in two forms: (1) as a breach of an implied term of his contract with WISD and (2) as a breach of Perez's due process/due course of law rights. WISD did not challenge the District Court's jurisdiction to hear the latter.

WISD has a longstanding historical practice of renewing the contracts of its non-Chapter 21 employees barring good cause or misconduct by that employee. CR 257 at ¶ 22. Moreover, Perez's own course of dealings with WISD reinforced this practice of expected renewals of annual employment contracts. *Id.* at ¶ 23 ("WISD always represented to me that it would following this policy with me. WISD followed this policy until I disclosed its misconduct."). This pattern of performance and representations that renewal should be expected added an implied right to reasonable expect renewal to Defendant's written employment contracts.

The Legislature has waived sovereign immunity for breach of written contracts. *See* Tex. Loc. Gov. Code § 271.152. The existence of a written contract is merely a jurisdictional prerequisite to the types of contracts the Court can construe and enforce; it is not a substantive limit on *how* the Court can construe or enforce a contract. *See Clear Lake City Water Auth. v. MCR Corp.*, No. 01-08-

15

00955-CV, 2010 WL 1053057, at *9 (Tex. App.—Houston [1st Dist.] Mar. 11, 2010, pet. denied) ("The existence of any implied term within the agreement has no bearing on whether the agreement constitutes a written contract.") The waiver of immunity applies "to any claims for breach of a contract falling within the terms of the statute. Once the trial court determines whether the contract falls within the provisions of Section 271.152, it need not parse further the pleadings or the contract to determine whether the legislature has waived immunity for breach of contract claims." *City of Mesquite v. PKG Contracting, Inc.*, 263 S.W.3d 444, 447 (Tex. App.—Dallas 2008, pet. denied).

Perez alleges that WISD breached an implied term of a written contract. As such, this claim falls within Section 271.152's waiver of immunity.

## Conclusion

WISD attempted to misappropriate its employee benefits funds and blame the shortfall on the only man who tried to stop them. WISD's vindictive review and termination of Perez violated the Texas Whistleblower Act and denied him his reasonable expectation of renewal. Perez prays that the Court reverse the District Court and grant Perez all other relief to which he is entitled.

Respectfully submitted,

**Hawash Meade Gaston Neese & Cicack LLP**

*/s/ Samuel B. Haren*
Andrew K. Meade
Texas Bar No. 24032854
Samuel B. Haren
Texas Bar No. 24032854
2118 Smith Street
Houston, Texas 77002
713-658-9001 (phone)
713-658-9011 (fax)
sharen@hmgnc.com

**Attorneys for Appellant, Adan Perez, Jr.**

17

## Certificate of Compliance

This brief complies with the length limitations of Texas Rule of Appellate Procedure 9.4(*i*)(2)(B) because it contains 3,804 words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(*i*)(1).

*/s/ Samuel B. Haren*
Samuel B. Haren

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing was served on

the following via electronic service on April 1, 2015[4]:

Stacy Tuer Castillo
Texas Bar No. 00796322
Walsh, Anderson, Gallegos, Green & Treviño, P.C.
100 NE Loop 410
San Antonio, Texas 78216
210-979-6633 (phone)
210-979-7024 (fax)
scastillo@wabsa.com

Miguel A. Saldaña
Texas Bar No. 17429450
Walsh, Anderson, Gallegos, Green & Treviño, P.C.
1105 East 3rd Street
Weslaco, Texas 78216
956-647-5122 (phone)
956-647-5421 (fax)
msalana@wabsa.com

/s/ Samuel B. Haren
Samuel B. Haren

---

[4] This brief is identical to the version filed on March 30, 2015 with the exception of (1) this certificate of service and (2) the previously-filed Appendix has been incorporated into the brief as a single .pdf file.

## Appendix

In accordance with Texas Rules of Appellate Procedure 38.1(k) and 38.2(a)(c), the following items are appended to this brief:

***Document***                                                                                                      ***Page***

Order Granting WISD's Plea (CR 427) ............................................................. A-1

Perez's Petition (CR 410–15) ....................................................................... A-2

Perez's Affidavit (CR 255–58) ...................................................................... A-8

TEA Investigation (CR 396–400) ................................................................... A-12

CAUSE NO. C-641-11-F

| | | |
|---|---|---|
| ADAN PEREZ, JR. | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff | § | |
| | § | |
| | § | 332nd DISTRICT COURT |
| WESLACO INDEPENDENT SCHOOL | § | |
| DISTRICT | § | |
| | § | |
| Defendant | § | HIDALGO COUNTY, TEXAS |

## ORDER GRANTING DEFENDANT'S PLEA TO THE JURISDICTION

On the 17TH day of DECEMBER , 2014 came on to be considered Defendant, Weslaco Independent School District's Plea to the Jurisdiction filed on October 3, 2014 in the above-entitled and numbered cause. The Court, having considered said Motion, finds that it is meritorious, therefore;

**IT IS ORDERED, ADJUDGED and DECREED** that Defendant, Weslaco Independent School District's Plea to the Jurisdiction is hereby **GRANTED**.

SIGNED this 17TH day of DECEMBER , 2014 at Hidalgo County, Texas.

_____
JUDGE PRESIDING

cc:     Court's file

Miguel A. Saldaña, Walsh, Anderson, Gallegos, Green & Treviño, P.C., 105 East 3rd Street, Weslaco, Texas 78596, fax: (956) 647-5421

Sam B. Haren, Hawash, Meade, Gaston, Neese & Cicak, L.L.P., 2118 Smith Street, Houston, Texas 77002, fax: (713) 658-9011

**A-1**

427

(TB)

CAUSE NO. C-641-11-F

| | | |
|---|---|---|
| ADAN PEREZ, JR., | § | IN THE DISTRICT COURT OF |
| *Plaintiff* | § | |
| | § | |
| v. | § | |
| | § | HIDALGO COUNTY, TEXAS |
| WESLACO INDEPENDENT | § | |
| SCHOOL DISTRICT **and** RICHARD | § | |
| RIVERA, | § | |
| *Defendants* | § | 332ND JUDICIAL DISTRICT |

## PLAINTIFF'S SECOND AMENDED PETITION

1.     Plaintiff Adan Perez, Jr. files this First Amended Complaint and would show the Court as follows:

### DISCOVERY

2.     Plaintiff intends to conduct discovery under Level 3 of the Texas Rules of Civil Procedure.

### PARTIES

3.     Plaintiff Adan Perez Jr. is an individual.

4.     Defendant, Weslaco Independent School District (hereinafter "WISD") has answered and appeared herein.

### JURISDICTION AND VENUE

5.     This court has jurisdiction and venue in this matter because a substantial portion of the acts and/or incidents giving rise to this action occurred within Hidalgo County, Texas and because the amount in controversy is within the jurisdictional limits of this court. Tex. Civ. Prac. & Rem. § 15.002(a)(1).

### BACKGROUND

6.     Perez was employed as the Risk Manager of WISD from July 2004 through June 2010. A part of his responsibility in that position was to manage certain employee benefit plans,

**A-2**

410

Electronically Filed
10/30/2014 1:42:16 PM
Hidalgo County District Clerks
Reviewed By: Miriam Castillo

including specifically, the district's workers' compensation self-funded program and the self funded employees' health insurance program.

7. WISD has a longstanding practice of renewing all contracts of its employees, absent cause, misconduct, or budgetary constraints. WISD continued this practice with Perez.

8. From 2005 through 2009, Perez's work was commended by the district and his performance reviews were more than satisfactory

9. In early, 2009, Perez became aware that WISD wanted to and did unlawfully remove funds from those self-funded programs for the specific purpose of beginning construction of a new "Press Box" at the district football stadium. When Perez informed Mr. Arnold Canche, the CFO of WISD, that the withdrawal and use of such funds violated state insurance law and the covenants of the district's insurance policies (not to mention the misuse of federal funds contributed), he was rebuked. Perez made several attempts to meet with Rivera regarding this issue, but was denied access to Rivera. Additionally, he was told that use of the funds was inconsequential as they would be repaid the following year upon passing of a bond election.

10. Perez also reported to his supervisor that the withdrawal of funds from the worker's compensation fund to re-fund the health insurance fund was an improper use of both state and federal funds. Again he was rebuked by Rivera with the same admonition.

11. Perez continued to present these claims to his supervisor, as well as, other administrators and members of the Board of Trustees for WISD.

12. Perez further notified the Texas Education Agency ("TEA") by telephone concerning WISD's misconduct. Perez was instructed to obtain documentation to support his

2

**A-3**

411

allegations. As such, Perez contacted WISD's business office and requested documents to show the misconduct to the TEA. Upon information and belief, WISD was aware of this contact.

13. Perez believed, based on his education and experience, that the TEA was the appropriate entity to whom he should make his report of WISD's misconduct.

14. Instead of correcting their improper and unlawful activity; in his 2010 review, WISD and Rivera reported that up Perez did not work well with others and had an improper attitude. This performance review contained numerous misrepresentations, including attempts to blame Perez for the misallocated funds.

15. Perez's contract was not renewed upon its expiration in June 2010.

16. Perez filed a formal complaint with the TEA concerning WISD's misconduct in June 2010. This formal complaint was a follow-up to his previous telephonic report.

17. WISD's non-renewal of Perez was the culmination of a pattern of unlawful activity designed to punish Perez and hide the unlawful conduct of WISD and its board members/employees.

18. Perez filed a timely appeal of his non-renewal and commenced the grievance process. WISD ignored these procedures and refused to grant Perez a hearing. Due to the delay by WISD, Perez terminated the grievance process and filed this lawsuit.

19. Perez's termination has stigmatized Perez in the industry as a bad risk manager who loses money. This has deprived him of his freedom to secure employment in his chosen field of municipal/school district risk management.

**A-4**

CAUSES OF ACTION

## I. Breach of Contract

20.     Due to both WISD's longstanding pattern of renewals and WISD own relationship with and representations to Perez, Perez's written employment contract included an implied right of expectation of renewal.

21.     WISD breached this implied term by refusing to renew Perez's contract despite the lack of any cause or misconduct by Perez.

## II. Texas Whistleblower Act

22.     Perez was terminated in retaliation for his reporting of WISD's misconduct to TEA, a body Perez reasonably believed to be an enforcement body with respect to this matter.

## III. Constitutional Rights

23.     Perez was punished for his exercise of speech rights protected by the Texas Constitution.[1]

24.     Perez was denied his property interest in a reasonable expectation of renewal without due process, due course, or equal protection of law under the Texas Constitution.

25.     Perez was denied his liberty interest in serving as a risk manager for another school/governmental body without due process, due course, or equal protection of law under the Texas Constitution.

DAMAGES

26.     At the time of the incidents complained of, Perez was gainfully employed. As a proximate result of the unlawful acts of WISD, Perez was terminated and suffered a loss of income and benefits for which he now sues. As a further result of the acts of WISD, Perez's

---

[1] Plaintiff's First Amended Petition inadvertently listed a claim under the United States Constitution; this was unintentional and is expressly disclaimed.

4

**A-5**

413

earning, retirement and capacity to earn a livelihood have been severely impaired resulting in a loss of earning capacity in the future for which he now sues.

27. As a further result of the actions of WISD, Perez has lost certain real property due his inability to make payments thereon, resulting in the loss of his investment and equity in such property for which he now sues.

28. Perez seeks statutory damages as determined appropriate by the court.

29. Perez seeks his reasonable and necessary attorney's fees incurred in the prosecution of this action as provided by law. Perez seeks these fees for the prosecution, trial and appeal of this cause.

30. Perez seeks exemplary damages, as the conduct of WISD constituted a knowing willful or intentional act; and/or was carried out with such a total want of care as to constitute a conscious indifference to the rights or welfare of the Perez.

31. Perez further seeks equitable relief in the form of resumption of employment with WISD with compensation equal to what it would have been but for WISD's constitutional violations.

CONDITIONS PRECEDENT

32. All conditions precedent have been performed or have occurred as required by Texas Rule of Civil Procedure 54.

PRAYER

33. Perez prays that the Court grant him a judgment against WISD for: the amount of actual damages as be proven to the satisfaction of this court; exemplary damages of at least three times the amount of actual damages awarded; statutory damages as provided; attorneys fees; prejudgment and post-judgment interest as allowed by law; costs of suit; and such other relief, in law and in equity, to which Plaintiff may be justly entitled.

**A-6**

Respectfully Submitted,

**HAWASH MEADE GASTON
NEESE & CICACK LLP**

/s/ Jake B. McDonald
Andrew K. Meade
Texas Bar No. 24032854
Jake McDonald
Texas Bar No. 24078165
Samuel B. Haren
Texas Bar No. 24059899
2118 Smith Street
Houston, Texas 77002
713-658-9001 (phone)
713-658-9011 (fax)

**Attorneys for Plaintiff
Adan Perez, Jr.**

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document has been served on all counsel of record via facsimile, October 30, 2014.

*Via Facsimile: (210) 979-7024*
Joe A. De Los Santos
Miguel A. Saldaña
Walsh, Anderson, Gallegos, Green & Trevino, PC
100 NE Loop 410, Suite 900
Houston, TX 78216

/s/ Jake B. McDonald
Jake McDonald

6

**A-7**

415

CAUSE NO. C-641-11-F

| | | |
|---|---|---|
| ADAN PEREZ, Jr. | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | 332ND JUDICIAL DISTRICT |
| | § | |
| WESLACO INDEPENDENT SCHOOL | § | |
| DISTRICT and RICHARD RIVERA | § | |
| Defendants | § | HIDALGO COUNTY, TEXAS |

ADAN PEREZ, Jr.                                          IN THE DISTRICT COURT
   Plaintiff
                                                        332ND JUDICIAL DISTRICT

WESLACO INDEPENDENT SCHOOL
DISTRICT and RICHARD RIVERA
   Defendants                                           HIDALGO COUNTY, TEXAS

## AFFIDAVIT OF ADAN PEREZ

THE STATE OF TEXAS          §
                            §
COUNTY OF _HARRIS_          §
                            §

BEFORE ME, the undersigned authority, on this day appeared **Adan Perez**, who is personally know to me and who, being duly worn on oath to tell the truth, testified as follows:

1. "My name is Adan Perez. I am over the age of eighteen (18) years, have never been convicted of a felony or a crime of moral turpitude, and am competent to make this affidavit. I have personal knowledge of the facts contained herein, and the facts are true and correct.

2. I have worked for over 30 years in insurance and risk management for private companies, state bureaucracies, and Weslaco Independent School District ("WISD").

3. In August of 2004, I began employment with WISD. I worked as risk manager for Weslaco for six years. During my first five years of employment, I consistently received positive evaluations and was never reprimanded by my superiors.

4. In fall of 2009, I attended a WISD board meeting and learned that WISD received certain state and federal funds that were to be utilized for WISD's self-funded employee's health insurance and workers' compensation insurance reserve. Instead, these funds were used to finance construction of an expansion of the WISD football stadium.

5. Upon discovering this information, I alerted my immediate supervisors, Andres Sanchez and Arnold Canche. I told them that I believed the transfer of the encumbered funds was illegal. They told me that at the time that it was not a concern.



EXHIBIT

B

**A-8**

6. I became concerned that nothing was being done regarding the illegal transfer of funds. I made several attempts to contact WISD's superintendent, Richard Rivera, but Rivera refused to meet with me. When I finally was able to voice my concerns to Rivera, Rivera expressed his disapproval and criticized my concern as being misguided.

7. In early 2010, I contacted my cousin Nancy Huerrera, an attorney with the U.S. Attorney General Office, to ask for her advice on the situation. My cousin recommended that I contact the Texas Education Agency ("TEA") to report the illegal activity.

8. Shortly After, I contacted TEA over the phone in effort to make a report of the illegal activity. I informed a representative of TEA that WISD unlawfully removed funds from self-funded programs for the purpose of beginning construction of a new 'press box' at the District's football stadium; that the District withdrew funds from the worker's compensation fund to refund the health insurance fund; and that I had previously reported this to my supervisors. The representative of TEA informed me that he would need to obtain physical evidence in order for TEA to initiate a formal investigation.

9. I do not recall the exact date that I contacted TEA, but I do know that it was before I received my negative performance evaluation and was notified that WISD was not renewing my contract.

10. Based on my education and experience, I believed that the TEA was the appropriate entity to whom I should make my report of the violation of law. I also followed the recommendation of my cousin who was an employee of the U.S. Attorney General Office.

11. All times during my employment, WISD held the TEA out as the appropriate regulatory enforcement agency related to laws governing the school district

12. Thereafter, I contacted the District's business department in effort to obtain physical evidence to substantiate his claim. I requested and received documentation that I believe showed that the funds were being used in an unlawful manner.

13. On February 5, 2010, I was called in for a meeting with Dr. Alejandro, the District's Deputy Superintendent. At the meeting, I received a negative performance evaluation and was informed that the District was not going to renew my contract for the next year.

2

**A-9**

14. I was shocked by the evaluation because I had received positive reviews for my entire employment with WISD. I did not suspect that I was being retaliated against for my reports to the TEA until after I consulted with my attorney.

15. At no time was I recommended for termination by WISD, nor was any action taken to initiate a termination of my employment.

16. I continued working through the term of my employment contract which expired by its own term on June 21, 2010.

17. On June 17, 2010, I sent a letter to the TEA explaining the misappropriation of funds by the District to follow up on his prior report in early 2010.

18. On July 20, 2010, Perez initiated his administrative complaint by submitting a Level I Employee Complaint Form.

19. On December 1, 2010, my lawyer and WISD's counsel attended a meeting together. I was under the impression that the meeting was to be a settlement discussion, but WISD apparently believed it was going to be a Level 1 Complaint hearing. I did not attend this hearing.

20. On December 15, 2010, WISD sent my lawyer notice that my Level I Grievance was denied and that I had ten days to file an appeal.

21. On March 8, 2011, I filed this lawsuit seeking damages for wrongful termination and retaliation by WISD against me.

22. I have personally witnesses a longstanding unwritten policy by WISD of automatically renewing contracts of its non-teacher employees ever year, barring cause, misconduct, or budgetary constraints.

23. WISD always represented to me that it would follow this policy with me. WISD followed this policy until I disclosed its misconduct.

24. WISD's false review of my work and its refusal to renew my contract has so thoroughly stigmatized me in the industry that I am unable to find work as a risk manager for a school/municipality.

Further, affiant sayeth not."

3

**A-10**



**Adan Perez**

SUBSCRIBED AND SWORN TO, BEFORE ME, by **Adan Perez**, on this the 28th day of October 2014, to certify which witness my hand and seal of office.

Notary Public for the State of Texas

4

**A-11**



September 7, 2012

Ruben Alejandro, Superintendent
Weslaco Independent School District
P.O. Box 266
Weslaco, TX 78599-0266

Dear Dr. Alejandro:

Enclosed are the final results of an investigative visit conducted by Texas Education Agency (TEA) auditors. The visit, conducted March 7, 2011, investigated a complaint against Weslaco Independent School District, and also reviewed the district's compliance with the American Recovery and Reinvestment Act of 2009 (ARRA) requirements for the 2009–2010 and 2010-2011 school years.

TEA's findings as a result of the investigation are given in the enclosed final report, along with the corresponding required actions. This report supersedes the preliminary report dated February 28, 2012, and includes the auditor's analysis of the district's response to the findings in the preliminary report.

A Corrective Action Plan (CAP) must be submitted to TEA to address the findings and required actions cited in the final report. Please submit the CAP using the format specified in the enclosure within 10 business days from the date of this letter.

We will review the CAP and determine if the information is complete and addresses the findings and required actions in the final report. Once the CAP is received and approved by the agency, we will close the complaint unless additional concerns relating to this matter are brought to our attention.

Should you have any questions, please contact the Division of Financial Audits at (512) 463-9095.

Sincerely,

Sonya Etheridge
Director
Division of Financial Audits

Enclosure

cc: Board Members, Weslaco Independent School District
    Emi Johnson, Director of Correspondence and Complaints Management Division, Texas Education Agency
    Division of Legal Counsel, Texas Department of Insurance
    Asa (Gene) Cunningham, Assisstant Inspector General of the Office of Inspections and Special Investigations, United States Department of Labor Office of Inspector General
    Reyna & Garza, PLLC, Independent Auditor for Weslaco Independent School District



EXHIBIT

O

396

**A-12**

Final Report of Investigative Review
March 7–9, 2011
Weslaco Independent School District

The exhibits in this report contain examples of investigative findings and are not all-inclusive. The auditors reviewed financial records and conducted interviews with the superintendent, district administrators, and other employees.

This report supersedes the preliminary report dated February 28, 2012. Based on the district's response, auditors requested through writing additional information related to the findings and received a response from the district on May 1, 2012. This report includes the TEA auditor's analysis of the district's response to the findings in the preliminary report as well as the response to the request for additional information.

## TEA AUDITOR FINDINGS—INVESTIGATION OF COMPLAINT

### Use of self-funded reserve monies

| | |
|---|---|
| Concern | The Weslaco Independent School District (WISD) transferred $1 million from its self-funded health insurance fund to its self-funded workers' compensation reserve monies (workers' comp fund), then transferred $2 million from the workers' comp fund to the district's construction fund to pay a portion of the cost of a new stadium press box. These transfers may be a violation of Section §1104(a) and §1106(a) of the Employee Retirement Income Security Act (see Appendix A and B). |
| Finding | The district's use of surplus funds from the health insurance fund and workers' comp fund for construction purposes may be unallowable. |
| Investigative Summary | Through interviews with district personnel, auditors discovered that the district's self-funded health insurance program is funded by a combination of premiums paid by the district for employees that choose its base insurance plan as well as premiums paid by employees for upgraded plans for themselves and their dependents. The workers' compensation insurance program is funded by the district and is based on a percentage of each employee's salary. |

A review of board minutes provided by the district disclosed that on May 18, 2009, the board of trustees approved a transfer of $1 million from the health insurance fund to the workers' comp fund and a subsequent transfer of $2 million from the workers' comp fund to the construction fund (see Exhibit A, page 12). Board minutes from a meeting held on August 10, 2009, also show that the funding for the construction of a new press box would be partially funded with workers' comp fund reserves, not the health insurance fund (see Exhibit B). However, the auditors' review of the district's Lone Star Investment Pool statements revealed that the district did not make the first transfer from the health insurance fund to the workers' comp fund. Instead, $1 million was transferred from each fund directly to the construction fund on May 29, 2009.

To explain the involvement of the health insurance fund, WISD administrators

1

**A-13**

indicated that in 2006, approximately $1 million was borrowed by the health insurance fund from the workers' comp fund. The transfer from the health insurance fund to the construction fund in May 2009 was intended to "repay" that loan. However, the district has not provided the auditors with evidence that money was transferred between the funds in 2006, nor that such a "loan" was approved by the board.

Subsequent to the auditors' on-site visit, the district stated that the transfer of monies from the workers' comp fund to the construction fund was allowable under Section 504.072 of the Texas Labor Code (see Appendix C). Although this statute provides a list of disbursements that are allowable, it is silent on the use of appropriations for construction purposes.

Further, because the district did not provide evidence that a loan existed between the health insurance fund and the workers' comp fund, it appears that the district used money contributed by employees to fund the construction of the new stadium press box. This may constitute a breach of fiduciary duty by the district.

Analysis of Response | After a review of documentation received from the district, auditors concluded that the transfer of monies from the workers' compensation fund to the construction fund was not allowable under Section 504.072 of the Texas Labor Code. This statute provides a list of allowable disbursements and the use of appropriations for construction purposes is not included in the list. The section referenced is provided below:

"A political subdivision may set aside from available appropriations, other than itemized salary appropriations, an amount sufficient to pay all costs, administrative expenses, benefits, insurance, and attorney's fees authorized by this chapter.

(b) The amount set aside under Subsection (a) shall be set up in a separate account in the political subdivision's records showing the disbursements authorized by this chapter. A statement of the amount set aside for disbursements from the account shall be included in an annual report made to the political subdivision's governing body and its treasurer."

Auditors' disagree with the district's analysis and maintain the integrity of the argument. Therefore, the auditors' position related to the transfer of monies from the worker's compensation fund to the construction fund remains unchanged.

**Unallowable uses of the Instructional Facilities Allotment**

Concern | The district used leftover monies from its Instructional Facilities Allotment (IFA) funds for purposes other than instructional facilities. The complaint alleges that IFA money was used to fund the self-funded health insurance fund and to repair non-instructional facilities.

Finding | The auditors examined documentation provided by the district relating to its IFA funds but were not able to substantiate the allegation made by the complainant.

2

**A-14**

# TEA AUDITOR FINDINGS—IMPROVING BASIC PROGRAMS TITLE I, PART A, AND AMERICAN REINVESTMENT AND RECOVERY ACT (ARRA) TITLE I, PART A

An additional concern was raised subsequent to the auditors' on-site visit to the district. This concern, along with the auditor's findings, is discussed below.

| | |
|---|---|
| Concern | The district did not comply with the payroll documentation requirements given in Office of Management and Budget (OMB) Circular A-87. |
| Finding | The district did not provide employees with after-the-fact periodic certification documentation that is required by OMB Circular A-87. |
| Investigative Summary | The district did not have employees sign after-the-fact periodic certifications or personnel activity reports, and paid contracted personnel without maintaining adequate documentation to support the allowability of the costs. |

The requirements in OMB Circular A-87 state that employees who work 100 percent in administrating programs that are part of consolidated administrative funds; who work under a single grant program; or who work under a single cost objective, including Title I, Part A school-wide programs funded from eligible multiple funding sources; must certify in writing, at least semi-annually, that they worked solely on the programs for the period covered by the certification. The certification must be signed by the employee or by the supervisor having first-hand knowledge of the work performed, and should reference the employee's signed and dated job description maintained in his or her personnel file. Charges to the grant must be supported by these semi-annual certifications.

It was disclosed through documentation received by the district that the staff development coordinator was funded with Title I, Part A and Title I, Part A ARRA funds during the 2009–2010 and 2010–2011 school years, but the district did not have the employee sign an after-the-fact periodic certification to support the allowability of the costs.

Total questioned costs are $76,164.53 for the 2009–2010 school year and $84,022.61 for the 2010–2011 school year.

| | |
|---|---|
| Analysis of Response | Based on the district's response, after-the-fact periodic certifications were not maintained for federally funded personnel. Procedures to ensure that the semi-annual certifications have been put in place by the district to comply with the requirements in OMB Circular A-87. |

The Division of Financial Audits will make a recommendation to the TEA'S Division of Federal Program compliance to take action regarding the reimbursement of questioned costs.

3

**A-15**

## TEA AUDITOR FINDINGS—AMERICAN REINVESTMENT AND RECOVERY ACT (ARRA) STATE FISCAL STABILIZATION FUND (SFSF)

An additional concern was raised subsequent to the auditors' on-site visit to the district. This concern, along with the auditors' findings, is discussed below.

Concern — The expenditures coded to SFSF Fund 266 capital outlay are not accordance with the approved budget for fiscal year (FY) 2010–2011.

Finding — The district may have acted in violation of the budget instructions for Appendix 3: BS6000—Program Budget Summary and Support, of the No Child Left Behind Act Consolidated Application for Federal Funding, 2010–2011 School Year. The instructions state that:

> Parts 4–9 contain the budgeted information for items either that require specific approval under the federal cost principles or that are of particular interest to our stakeholders. To be reimbursed by TEA for an item that requires specific approval, it must be properly budgeted in the grant application. The budget information is as follows:
> Part 4: Itemized 6100 Payroll Costs—All payroll costs require specific approval. Part 5: Itemized 6200 Professional and Contracted Services Costs Requiring Specific Approval, Part 6: Itemized 6300 Supplies and Materials Costs Requiring Specific Approval, Part 7: Itemized 6400 Other Operating Costs Requiring Specific Approval, Part 8: Itemized 6600 Capital Outlay—All capital outlay requires specific approval, regardless of cost.

Investigative Summary — It was disclosed that the district had expenditures of $39,988.15 coded to capital outlay for FY 2010–2011, but had no funds budgeted for capital outlay; therefore, the district was not allowed to transfer budgeted amounts to capital outlay from other categories. For this reason, these expenditures are questionable unless the district submitted a budget amendment and that amendment was approved by TEA before the grant closed. The total questioned costs are $39,988.15.

Analysis of Response — According to the district, staff inadvertently omitted to request a budget amendment for capital outlay purchases made in FY 2010–2011. The district stated that if allowed, it would submit an amended budget to appropriately reflect the purchases made with the grant funds.

The agency cannot grant the district's request to submit an amended budget. The deadline to submit an amended budget for the 2010–2011 ARRA Title XIV SFSF grant ended on July 8, 2012. The Division of Financial Audits will make a recommendation to the TEA'S Division of Federal Program compliance to take action regarding the reimbursement of questioned costs.

## REQUIRED ACTIONS

1. The district must provide the agency with evidence that a loan was made with self-funded workers' compensation fund reserves to the self-funded health insurance fund, and that the

4

**A-16**